IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ERIC WARNER, ) | |
| ) | |
| Plaintiff, ) | 8:07CV468 |
| ) | |
| vs. ) | ORDER |
| ) | |
| EATON CORPORATION, ) | |
| as Plan Administrator of the Eaton ) | |
| Corporation Long Term Disability Plan, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 58).[1] The defendant filed a brief (Filing No. 59) and an index of evidence (Filing No. 60) in support of the motion. The defendant also relied upon the Administrative Record (AR) (Filing No. 56) previously filed. The plaintiff did not file any opposition to the motion. For the reasons stated below, the court concludes the defendant's motion should be granted and judgment entered for the defendant.

**INTRODUCTION**

The plaintiff claims he is entitled to long term disability benefits from his employer after becoming disabled and denial of such benefits was an abuse of discretion. **See** Filing No. 1, Ex. 1 - Complaint ¶ 11. In the complaint, the plaintiff alleges he became disabled on April 16, 2004, when he was no longer able to return to gainful employment. *Id.* ¶ 10-11. The plaintiff's claim for benefits is based upon the Eaton Corporation Long Term Disability Plan (the Plan), which is an "employee welfare benefit plan," as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1001(1). The Plan is a self-funded plan sponsored by Eaton Corporation. **See** Filing No. 8 - Answer ¶ 4. On December 5, 2007, the defendant

---

[1]The undersigned magistrate judge exercises jurisdiction over this matter after consent by the parties. **See** Filing No. 32.

removed the action to this court based on federal question jurisdiction. **See** Filing No. 1 - Notice of Removal.

On December 1, 2008, the defendant filed the instant motion for summary judgment seeking judgment on the plaintiff's claim. **See** Filing No. 58. The defendant argues the undisputed facts show the plaintiff was not continuously disabled and therefore the administrator's decision to deny benefits was not an abuse of discretion. The plaintiff did not file any resistance. On January 26, 2009, the defendant filed a reply brief noting the plaintiff's failure to file a motion for summary judgment or a response to the defendant's motion. **See** Filing No. 61.

## UNCONTROVERTED FACTS

**A.  Relevant Plan Terms**

1.  Eaton Corporation is the Employer and Plan Sponsor of the Plan, which is self-insured. **See** Filing No. 56 - AR p. 46.[2]

2.  The Plan Section 4.2(b) provides discretion to the Plan Administrator as follows:

> The Plan Administrator and its delegate pursuant to Subsection (c)[3] of this Section shall have the sole and absolute authority and responsibility for construing and interpreting the provisions of the Plan, subject to any applicable requirements of law. The Plan Administrator's powers include, but are not limited to, establishing rules and regulations as it deems necessary or proper for the efficient administration of the Plan and for the payment of the cost of coverage or benefits under the Plan, interpreting the Plan, deciding all questions concerning the eligibility of persons to participate in the Plan, construing any ambiguous provisions of the Plan, correcting any defect, supplying any omission and reconciling any inconsistency, in such manner and to such extent as the Plan Administrator, in its discretion, may determine. Any such

---

[2] The page number refers to the page number stamped on the bottom right-hand corner of each page of the record.

[3] Section 4.2(c) states that "the Plan Administrator may delegate responsibility for the operation and the administration of the Plan." **See** Filing No. 56 - AR p. 8.

>    action of the Plan Administrator will be binding and conclusive
>    upon all Participants in the Plan.

*Id.* p. 8.

     3.    Additionally, the Summary Plan Description's section entitled Plan Interpretation also confers discretion on the Plan Administrator as follows:

>    Benefits under the Eaton Long Term Disability Plan will be paid
>    only if the Plan Administrator and/or Claims Administrator
>    decides that the applicant is entitled to them under the terms
>    of the Plan. The Plan Administrator and/or Claims
>    Administrator has discretionary authority to determine eligibility
>    for benefits and to construe any and all terms of the Plan,
>    including but not limited to, any disputed or doubtful terms.
>    The Plan Administrator and/or Claims Administrator also has
>    the power and discretion to determine all questions arising in
>    connection with the administration, interpretation and
>    application of the Plan. Any and all determinations by the Plan
>    Administrator and/or Claims Administrator will be conclusive
>    and binding on all persons, except to the extent reviewable by
>    a court with jurisdiction under ERISA after giving effect to the
>    time limits described in the "Claims Appeal Procedure" section
>    of this booklet.

*Id.* p. 49.

     4.    A participant is eligible for monthly long term disability benefits if he has a covered disability as defined under "Covered Disability" and he is under the continuous care of a physician who verifies, to the satisfaction of the Claims Administrator, that he is totally disabled. *Id.* p. 32.

     5.    The Plan defines "Covered Disability" as follows:

>    You are considered to have a covered disability (see
>    "Disabilities Not Covered" for exceptions) under the Plan if, as
>    the result of an occupational or non-occupational illness or
>    injury:
>    •    During the first 24 months, including any period of short
>        term disability, you are totally and continuously unable
>        to perform the essential duties of your regular position
>        with the Company, or the duties of any suitable
>        alternative position with the Company; and
>    •    Following the first 24 months, you are totally and
>        continuously unable to engage in any occupation or
>        perform any work for compensation or profit for which

>> you are, or may become, reasonably well fit by reason of education, training or experience – at Eaton or elsewhere.

*Id.* p. 32.

6. The Plan requires periodic certification of the participant's disability status, which may include an independent medical examination (IME) and/or functional capacity test. *Id.* p. 38.

7. The Plan requires a participant's disability to be substantiated by objective evidence. The Plan requires objective evidence as follows.

> Objective findings of a disability are necessary to substantiate the period of time your physician indicates you are disabled. Objective findings are those that can be observed by your physician through objective means, not just from your description of the symptoms.
> Objective findings include:
> • Physical examination findings (functional impairments/ capacity);
> • Diagnostic test results/imaging studies;
> • Diagnoses;
> • X-ray results;
> • Observation of anatomical, physiological or psychological abnormalities; and
> • Medications and/or treatment plan.

*Id.*

8. At the outset of plaintiff's disability, the Plan's Claims Administrator was Broadspire Services, Inc (Broadspire). **See** *id.* p. 205, 237. Aetna became the Claims Administrator when it acquired Broadspire. **See** *id.* p. 222. As of January 1, 2007, the Claims Administrator was Sedgwick CMS. **See** *id.* p. 47.

9. The Plan Administrator is the "Eaton Corporation Health and Welfare Administrative Committee." *Id.* p. 46. The Claims Administrator and the Plan Administrator, taken together, are referred to herein as the "Administrator."

B. **The Plaintiff's Disability Benefits**

10. The plaintiff was employed by Eaton Corporation as a Heavy Press Operator until August 7, 2004. *Id.* p. 130.

11.     The plaintiff's claim for continued long term disability (LTD) benefits is based upon his claim of chronic low back pain associated with spondylolysis.  *Id.* p. 67.

12.     The plaintiff received short term disability benefits for six months under the Eaton Corporation Short Term Disability Program from August 7, 2004, through February 4, 2005.  **See** *id.* p. 60.

13.     The plaintiff underwent surgery, a pedicle screw fixation and lumbar fusion, on February 17, 2005.  *Id.* p. 114-115.

14.     Thereafter, the Plan approved LTD benefits under the "own occupation" (First Tier) definition of covered disability as of February 5, 2005, which the plaintiff received until he returned to work on May 26, 2005.  *Id.* p. 59.

15.     The plaintiff relapsed, and began receiving First Tier LTD benefits again as of July 19, 2005.  *Id.*

16.     As part of a routine review of the plaintiff's file, and in anticipation of the transition from First Tier ("own occupation") to Second Tier ("any occupation") LTD benefits as of October 1, 2006, the Claims Administrator sought updated medical documentation of plaintiff's condition.  *Id.* p. 205-206, 211-217; **see also** *id.* p. 38.

17.     The plaintiff submitted a Resource Questionnaire dated March 12, 2006, in which he listed his current treating physicians; indicated that he took one to two pain pills as needed for pain, not exceeding four times per day; was denied Social Security benefits but had filed for reconsideration[4]; regularly took care of personal needs, cooked and did child care; slept for a few hours at a time; drove once a month; walked three to four blocks at a time; was applying for school; fished ("once in a great while"); and used the Internet as a hobby.  *Id.* p. 207-210.

18.     In an August 2005 Questionnaire, the plaintiff indicated he did not regularly do any chores ("do very little"); he could sleep for only 1½ to 2 hours at a time; his activities

---

[4]The most recent denial from the Social Security Administration was dated October 5, 2005, and states: "While you are unable to work at this time, with continued treatment your condition is expected to improve by 2/17/06 such that you could perform work activity that is lighter and less strenuous."  *Id.* p. 240.

included only watching TV and reading; and he took two pain pills every four hours. *Id.* p. 198-201.

19. The plaintiff submitted a report dated April 4, 2006, which shows that sacral screws from earlier surgery had fractured, but which noted:

> There is marked disc space narrowing at L5-S1. A grade 1-2 anterolisthesis is present at L5-S1 which measures 1.5 cm. This is stable between flexion and extension, and there is no other subluxation to suggest instability. The remaining disc spaces are all well preserved.

*Id.* p. 119.

20. Additionally, the plaintiff submitted office visit notes from his family physician, Christian Jones, M.D., from January 24, 2006, and March 29, 2006. The notes address allergic rhinitis and back discomfort from a battery pack for a bone stimulator left in after the 2005 surgery. While the notes mention chronic pain, it does not comment about whether the plaintiff was continuously disabled or unable to engage in an occupation. *Id.* p. 72-73.

21. The plaintiff's neurosurgeon, Pradeep Narotam, M.D., submitted an Attending Physician's Statement dated April 14, 2006, in which he indicated the plaintiff had not reached maximum medical improvement, the plaintiff's prognosis was "guarded," the plaintiff was "unable to return to work," and an "FCE" (functional capacity evaluation) was needed. It is not clear whether Dr. Narotam meant the plaintiff could not return to his former occupation or any work, because Dr. Narotam did not complete the "Level of Impairment" and "Activities" sections. *Id.* p. 127-129.

22. The plaintiff underwent an FCE on May 24, 2006, which was arranged by the Claims Administrator. *See id.* p. 138.

23. The Physical Performance Evaluation report (PPE), based on the May 24, 2006 FCE, concluded the plaintiff was capable of sedentary to light work, with some restrictions. *Id.* p. 139, 172.

24. Specifically, the PPE report indicates the plaintiff drove himself (a trip of approximately 30 minutes) to the examination; his resting heart rate was 69 bpm; his hobbies are hunting, fishing, and shooting; his reports of pain and associated disability

were both reasonable and reliable overall; he was restricted from certain activities, but he could perform sedentary to light duty work. *Id.* p. 139, 142, 144, 155.

25. On June 29, 2006, the plaintiff underwent an IME conducted by Dr. David Diamant, who specializes in Physical Medicine and Rehabilitation, and arranged by the Claims Administrator. *Id.* p. 158-161.

26. Dr. Diamant concluded the plaintiff could engage in sedentary to light duty work, with certain restrictions. *Id.* p. 161, 162.

27. Dr. Diamant reviewed the plaintiff's medical file, spoke with the plaintiff about his current condition, spoke with the plaintiff about the plaintiff's participation in a program of vocational rehabilitation and about the plaintiff's desire to return to work which is less taxing on his body. *Id.* p. 158-161. Additionally, Dr. Diamant conducted a full physical examination about which Dr. Diamant wrote:

> Inspection reveals a burly man who while seated leans forward. While statically standing, there is a lengthy lumbar scar noted as well as a small palpable mass (battery pack) just to the right of the incision. Forward flexion a third of the way down, he thereafter complains of increased pain.
>
> While seated, reflexes are normal at the patella and Achilles tendons bilaterally. Strength is 5/5 in knee extension, ankle dorsiflexion, big toe extension, and ankle eversion bilaterally. Sensation is normal in the L3 through S1 dermatome bilaterally. 2+ dorsalis pedis pulse bilaterally. Passive internal rotation of each hip reproduces his back pain.
>
> While recumbent he has markedly tight hamstrings, stretching of which causes back pain.

*Id.* p. 160.

28. The Claims Administrator arranged for an evaluation of the plaintiff by Randall W. Norris, MS, CRC, CCM, LRC, who submitted an Employability Assessment Report on July 26, 2006. Mr. Norris identified four occupations in the sedentary to light duty level of work, which could accommodate the plaintiff's restrictions and limitations. *Id.* p. 130-137.

7

29.     In addition, Mr. Norris submitted a Labor Market Survey dated August 15, 2006, in which six job openings were identified in the four occupations found to be appropriate for the plaintiff.  *Id.* p. 163-168.

### C.     Termination of LTD Benefits

30.     By letter dated August 25, 2006, the Claims Administrator informed the plaintiff that the plaintiff was not eligible for Second Tier LTD benefits effective September 30, 2006, because the documentation, including the April 4, 2006 report, and the results of the May 2006 FCE and June 2006 IME, demonstrated he was not continuously disabled from any occupation.  The letter listed types of objective medical documentation needed to support a claim for disability, and provided instructions regarding appeal. *Id.* p. 218-220.

31.     The plaintiff received First Tier LTD benefits through September 29, 2006. **See** *id.* p. 219.

32.     By handwritten note received on October 17, 2006, the plaintiff appealed the denial of continued LTD benefits. *Id.* p. 221.  The plaintiff submitted medical records with his appeal.

33.     Notably, plaintiff submitted office notes from Dr. Narotam from April 4, 2006, and September 27-28, 2006, all of which discussed the April 2006 x-rays that showed no instability.  Also submitted was a letter dated April 6, 2006 from Dr. Narotam to plaintiff's family physician, Dr. Jones, in which Dr. Narotam stated the plaintiff "has no radiculopathy, and his L5 function has returned to normal," the plaintiff's condition was stable and surgery would not be of "significant benefit without additional risks." *Id.* p. 106-109.  The records do not state the plaintiff was continuously disabled from any occupation.

34.     The plaintiff's appeal was acknowledged in a letter from the Claims Administrator dated October 19, 2006. *Id.* p. 222.

35.     In order to provide a fresh look at the plaintiff's claim for continued benefits, the Claims Administrator engaged an orthopedic surgeon to consider the entire claim file. *Id.* p. 169-173.

36.     Martin G. Mendelssohn, M.D., an orthopedic surgeon, completed a peer review report dated November 28, 2006. *Id.* p. 169-173.  Dr. Mendelssohn, taking into

consideration the plaintiff's permanent limitations, determined the documentation did not support an impairment which would preclude the plaintiff from returning to work at the "any occupation" tier, particularly at the sedentary to light level. *Id.* p. 172.

37.     Specifically, Dr. Mendelssohn responded to specific questions asked about functional impairment by stating:

> A1.     Based on the medical documentation although the claimant has had surgical intervention, has had evidence of some failure of the sacral screws, follow-up x-rays reveals [sic] that the fusion is stable. He has no evidence of any radiculopathy. He complains of low back pain. Dr. Diamant performed an IME and notes that the claimant is able to return to a sedentary to light physical exertion level, which would correlate with the claimant's FCE. Therefore, a functional impairment that would preclude the claimant from "any occupation" from 09/30/06 through present cannot be substantiated.
> A2.     Based on the medical documentation, FCE and the IME by Dr. Diamant the claimant is capable of returning to a sedentary to light physical exertion level in which he can occasionally lift objects at waist height, but no higher than shoulder level and that he should be able to change positions on a frequent basis. These limitations and restrictions are permanent.
>
> * * *
>
> A4.     No. There is no indication that any medication the claimant is taking would impact his ability to work.

*Id.* p. 172.

38.     Based on a review of the entire claim file, including the medical records submitted by the plaintiff and the independent peer review, the Claims Administrator upheld its original decision to deny continued LTD benefits under the Plan, by correspondence dated November 29, 2006. *Id.* p. 223-227.

39.     The plaintiff was again notified of his right to appeal and also encouraged to submit any additional objective medical evidence to support an appeal. *Id.* p. 226-227.

40.     By handwritten note dated December 11, 2006, the plaintiff again appealed the denial of benefits. The plaintiff stated that Dr. Diamant did not examine him because he was only in Dr. Diamant's office "about two minutes"; that he cannot make drives of any

length; that his pain is constant; and that he has to soak in hot baths up to six times a day. *Id.* p. 228-229.

41. In a letter dated December 21, 2006, the Claims Administrator acknowledged receipt of the appeal on December 19, 2006. *Id.* p. 231.

42. The Plan Administrator arranged for an orthopedic surgeon from an independent third party medical review organization, Medical Review Institute of America (MRIoA) to conduct a review of the entire claim file. **See** *id.* p. 58. A clerical error by the Claims Administrator in transmitting the claim file to the Plan Administrator resulted in both the Plan Administrator and the MRIoA physician reviewer indicating that the termination of benefits date to be November 8, 2006, rather than September 30, 2006. **See** *id.* p. 51, 55, 58, 59. However, all prior correspondence with the Claims Administrator reflected the correct date, and no clinical review or medical documentation, including documentation submitted by the plaintiff, reflected a date after September 29, 2006. **See, e.g.,** *id.* p. 122, 172, 223.

43. On February 8, 2007, an independent orthopedic surgeon, who has been in active practice since 1990, concluded the plaintiff was capable of returning to work with permanent restrictions. *Id.* p. 53-56. The conclusion was based on the reviewer's examination of the medical records from Dr. Jones at the Kearney Clinic, medical records from Dr. Narotam including the surgical notes, radiological records, FCE, and IME. *Id.* p. 53.

44. Eaton Corporation conducted a final review of the plaintiff's LTD benefit claim, and in a letter dated February 13, 2007, concluded the Claims Administrator had properly processed the claim and no additional benefits were due. *Id.* p. 51. Thus, Eaton Corporation certified the denial of the plaintiff's disability benefits.

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); **see** *Nat'l Am. Ins. Co. v. W & G, Inc.*,

439 F.3d 943, 945 (8th Cir. 2006). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting** *Anderson*, 477 U.S. at 248 ). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

**See** Fed. R. Civ. P. 56(e)(2). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)); *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005).

Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

Additionally:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response</u>.

**See** NECivR 56.1(b)(1) (emphasis in original).

In the instant case, the plaintiff did not resist the defendant's motion. However, the court must proceed to consider whether there is any material fact in dispute and whether the defendant is entitled to judgment as a matter of law.

## ANALYSIS

**A.   Denial of Benefits Under ERISA**

"When a plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a denial of benefits is reviewed under an abuse of discretion standard." *Menz v. Procter & Gamble Health Care Plan*, 520 F.3d 865, 689 (8th Cir. 2008) (**citing** *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, a conflict of interest, such as where the employer both funds the plan and evaluates the claims, "should be weighed as a factor in determining whether there is an abuse of discretion," but does not change the standard of review. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348-50 (2008) (*Glenn*); **see also** *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 581-82 (8th Cir. 2008). A particular conflict of interest

"should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision." *Glenn*, 128 S. Ct. at 2351. It is the plaintiff's burden to "present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty." *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 581 (**quoting** *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)).

In the present case, it is undisputed that the Plan grants discretionary authority to its administrators to determine eligibility and to interpret the terms of the Plan. **See** Filing No. 56 - AR p. 49. The plaintiff has failed to present evidence sufficient to demonstrate a breach of the administrator's fiduciary duty. Accordingly, the court will apply an abuse of discretion standard of review, but will take into consideration the employer's relationship with the fund.

B.  **Substantial Evidence**

"Under the abuse of discretion standard, we look to see whether [the plan administrator's] decision was reasonable. In doing so, we must determine whether the decision is supported by substantial evidence, which is more than a scintilla, but less than a preponderance." *Willcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 700 (8th Cir. 2009) (alteration in original) (internal quotation and citation omitted). "[A] reviewing court may not substitute [its] own weighing of the evidence for that of the administrator" and if substantial evidence supports the conclusion, the court must uphold the decision even if the court disagrees with the different, yet interpretation of the plan administrator. *Id.* at 702; *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 (8th Cir. 2008). "Substantial . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938); **see** *Jackson*, 530 F.3d at 701. "It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." *Jackson*, 530 F.3d at 701 (citation omitted). The defendant did just that, finding objective evidence of the plaintiff's inability to return to work or to support chronic low back pain was lacking.

In contrast to the plaintiff's complaint, the record evidence demonstrates the plaintiff was capable of performing work on a sedentary level after September 30, 2006.

Under the Plan LTD benefits are provided when a participant meets the definition of a "Covered Disability."  **See** Filing No. 56 - AR p. 32.  Under the First Tier definition of a "Covered Disability," a participant meets eligibility requirements when he is totally and continuously unable to perform the essential duties of his regular position with Eaton Corporation. *Id.*  After the first twenty-four months, eligibility under the Second Tier is met only when the participant is "totally and continuously unable to engage in any occupation or perform any work for compensation or profit." *Id.*

The plaintiff met the eligibility requirements and received benefits under the First Tier.  Near the end of the benefits period, the defendant was required to, and did, evaluate the plaintiff's eligibility for additional benefits.  However, the medical evidence did not support benefits under the Second Tier for participants unable to engage in any occupation.  The defendant conducted an appeal and had an independent review of the materials, but confirmed the plaintiff's ineligibility.  Specifically, the PPE in May 2006, performed at the suggestion of the plaintiff's treating physician, supports the Administrator's decision that the plaintiff was capable of performing work at a sedentary to light level.  Additionally, the June 2006 IME, arranged for by the Administrator, demonstrated the plaintiff was capable of returning to work.  Moreover, the only physician to suggest the plaintiff was not able to return to work, Dr. Narotam, did so in April 2006, but also recommended an FCE to determine the plaintiff's functional capacity.  The resulting report concluded the plaintiff could return to sedentary to light duty work, and there is no evidence in the record suggesting Dr. Narotam disagreed with the FCE conclusion.  Further, the plaintiff's medical records and tests demonstrate the plaintiff's condition had stabilized.  Finally, the physician peer review and the MRIoA specialist both determined the plaintiff failed to meet the definition of "Covered Disability" under the Second Tier determination contained in the Plan.  The defendant's decision is also supported by the plaintiff's own statements about his abilities given during the course of the process.  Accordingly, the defendant did not abuse its discretion in denying benefits to the plaintiff, and judgment in its favor is thus warranted.  Upon consideration,

**IT IS ORDERED:**

1. The defendant's Motion for Summary Judgment (Filing No. 58) is granted.

2. This action and the plaintiff's Complaint are dismissed with prejudice.

3. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

DATED this 19th day of February, 2009.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge